UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JOSHUA CHEATHUM,
                Defendant.

23-CR-27 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Defendant Joshua Cheathum was arrested and charged with knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1)-(2).  (ECF No. 1 ("Crim. Compl."); ECF No. 18 ("Indictment").)  On July 10, 2023, Cheathum filed two motions:  a motion to suppress a firearm recovered during a March 9, 2022 search of his apartment, as well as statements he made during the search; and a motion to dismiss the Indictment based on the Second Amendment to the United States Constitution and the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  (ECF No. 36.)  For the reasons discussed below, Cheathum's motions are denied.

**I.     Background**

      In December 2017, Cheathum was convicted of two New York state felony offenses in Kings County Supreme Court: (1) conspiracy in the second degree, in violation of New York Penal Law ("NYPL") Section 105.15, for which he was sentenced to one to three years' imprisonment; and (2) robbery in the second degree, in violation of NYPL Section 160.10, for which he was sentenced to five years' imprisonment and three years of post-release supervision.  On or about May 27, 2020, Cheathum was released from prison and began his term of New York state parole.  (Crim. Compl. ¶ 3.)

On March 19, 2022, a field intelligence sergeant for the New York City Police Department ("NYPD") observed a video publicly posted on Cheathum's Instagram account that showed Cheathum rapping and holding what appeared to be a firearm. (*Id.* ¶ 4(a).) Cheathum was not permitted to possess a firearm under the terms of parole. (*Id.* ¶ 4(b).) Upon seeing this Instagram post, the NYPD officer contacted Cheathum's parole officer regarding the possible violation of parole. (*Id.*) The terms of Cheathum's parole provided that New York State Parole ("NYS parole") officers were permitted to search Cheathum's residence periodically and upon reasonable suspicion of a violation of the terms of parole, and Cheathum was required to consent to any such search. (*Id.*)

That same day, NYS parole officers, accompanied by NYPD officers, conducted a warrantless search of Cheathum's apartment. (*Id.* ¶ 4(c).) Upon arriving at Cheathum's residence, a parole officer knocked on the door, and Cheathum answered. (*Id.*) The NYPD officers and the parole officers then entered Cheathum's apartment. (*Id.*) The parole officers explained to Cheathum that they were there for a safety search and placed him in handcuffs. (*Id.*) Cheathum then escorted the parole officers to a bedroom in the apartment. (*Id.* ¶ 4(d).) Cheathum stated to the parole officers that the bedroom was his, as were other items in the bedroom. (*Id.*) One of the parole officers then observed a firearm with an extended magazine in the bedroom, which looked similar to the firearm in the Instagram video. (*Id.* ¶ 4(d)-(e).) Cheathum acknowledged that the firearm was there and stated that it was not his. (*Id.* ¶ 4(d).) NYPD Officers then placed Cheathum under arrest. (*Id.*)

II.     **Motion to Suppress**

   A.   **The Firearm**

Cheathum first argues that the firearm seized from his apartment must be suppressed because law enforcement had no authority to enter his apartment without a warrant on March 19,

2022, given that his parole term had expired as of March 1, 2022, when the New York Less is More Act (the "Act") went into effect.  N.Y. Penal L. § 70.40(4); 2021 Sess. Law News of N.Y. Ch. 427 § 10 (S. 1144-A).  Under the Act, an individual's term of supervised release "shall be reduced by thirty days for every thirty days that such person does not violate a condition of and remains in compliance with all conditions of his or her community supervision."  N.Y. Penal L. § 70.40(4)(b).  As is pertinent here, the Act also provides that "[r]etroactive earned time credits shall be awarded to eligible persons subject to community supervision at the time this legislation becomes effective, provided, however, that the maximum allowable retroactive earned time credit awarded shall not exceed a period of two years."  *Id.* §70.40(4)(c).

Cheathum argues that when the Act went into effect on March 1, 2022, he was due his earned time credits, which retroactively discharged him from parole as of that date. The Government maintains that Cheathum's reading overlooks the Act's effective date provision, which states that the Act:

> shall take effect March 1, 2022;  . . . provided however, within six months of such effective date, the department of corrections and community supervision in consultation with the board of parole shall calculate and award all earned time credits pursuant to subdivision 4 of section 70.40 of the penal law as added by section two of this act to all persons serving a sentence subject to community supervision at the time this legislation becomes law retroactive to the initial date such person began his or her earliest period of community supervision prior to any revocation of community supervision.

2021 Sess. Law News of N.Y. Ch. 427 § 10 (S. 1144-A).  According to the Government, Cheathum's reading ignores that the Act explicitly gives the New York State Department of Corrections and Community Supervision ("DOCCS") six months to calculate and award the credits.  DOCCS calculated Cheathum's retroactive credits on April 28, 2022, and the results of that calculation were relayed to the assigned field bureau on May 3, 2022.  (*See* ECF No. 50-2

3

("O'Brien Aff.") ¶¶ 7, 9, Exs. D, E.)  Based on the credit Cheathum earned retroactively under the Act, his term of parole would have ended on June 27, 2021, and his Certificate of Disposition therefore reflects that his term of parole ended on that date.  The Government contends that Cheathum remained on parole until April 28, 2022, the date on which DOCCS calculated and awarded his credit.

Judge Gardephe recently addressed the same issue presented here in *United States v. Brown*, No. 22-CR-266 (PGG), 2023 WL 208171, at *5 (S.D.N.Y. Jan. 13, 2023).  This Court agrees with Judge Gardephe's opinion and adopts its reasoning.  As Judge Gardephe explained:

> The clause granting the implementation period follows and modifies the "take effect" clause, as indicated by the phrase, "provided however."  The obvious legislative purpose behind the implementation period was to give DOCCS and the parole board time to "calculate and award all earned time credits" for the thousands of New York State parolees whose parole terms would be modified as a result of the Act.  These calculations could not be performed overnight.  Accordingly, the legislature provided for a six-month implementation period in which DOCCS and the parole board would calculate and award each parolee's earned time credits and determine each parolee's adjusted discharge date.  Legislation that did not provide for an implementation period would have led to chaos.

*Id.* at *5.  Judge Gardephe reasoned that the "retroactive" term "does not alter the fact that the legislature granted DOCCS and the parole board a six-month implementation period to 'calculate and award all earned time credits' under the Act." *Id.* at *6.  Rather, the term "retroactive" as used in the Act, "is used to make clear that DOCCS and the parole board must calculate a parolee's earned time credits based on all time the parolee served on parole, including time served before the Act's effective date of March 1, 2022." *Id.* at *6 (citing *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30, 37 (2006)) (internal quotation marks omitted).  This Court agrees.

Cheathum argues that this reading of the Act "would have unintended policy consequences." (ECF No. 53 at 3.)  Under such a reading, "two individuals, convicted of the

4

same crimes, sentenced to the same terms of community supervision, released on the same days, and who both have no supervision violations, could have markedly different parole expiration dates depending solely on the diligence or ulterior motives of the DOCCS official handling their case." (*Id.*)  According to Cheathum, "[t]his could not have been the legislatures' intent behind § 10 of the Act; especially considering that such an interpretation could be vulnerable to equal protection claims." (*Id.*) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). This concern seems to have motivated the inclusion of the six-month implementation period. Under the six-month deadline, DOCCS must exercise diligence in calculating and awarding individuals' earned credits.  Should a DOCCS official have ulterior motives, the six-month deadline places a limit on the length of time a DOCCS official may delay the calculation and award of earned credits.  Although Cheathum is correct that the existence of an implementation period for DOCCS to calculate and award earned credits will likely lead to cases in which two otherwise similarly situated individuals have different parole expiration dates, those expiration dates can differ by at most only six months.  And, as explained above, the legislature understood that DOCCS and the parole board could not perform these calculations overnight.

Cheathum also argues that DOCCS's own "internal guidance" and "actions in discharging parolees who purportedly violate the terms of their release during the 'six-month implementation period' directly contradict" this interpretation of the Act.  (ECF No. 53 at 3, 5.) However, to the extent that DOCCS's own practices shed light on the meaning of the Act, the Government's opposition describes how the parole board continued to supervise Cheathum for more than a month after March 19, 2022, and the case management system reflects that Cheathum was discharged from parole on or about April 29, 2022.  (ECF No. 42-2 ("Green-O'Neal Decl.") ¶ 4, Ex. A.)  "[D]uring the time period from approximately March 19 through

April 29, 2022, the defendant reported to meet with parole officers on approximately *six* occasions and officers conducted approximately *two* home visits of the *same* residence that was searched on March 19, 2022." (ECF No. 42 at 4-5; *see also* Green-O'Neal Decl. ¶ 4.) In addition, the Government explains that "unless a supervisee is on parole, it is impossible to access the relevant case management system and/or to make entries in it for that individual." (ECF No. 42 at 4; *see also* Green-O'Neal Decl. ¶ 6.) "[N]umerous entries—including those reflecting the defendant's continued reporting to parole following the March 19, 2022 search[—]are reflected in the case management system." (ECF No. 42 at 5; *see also* Green-O'Neal Decl. ¶ 6.)

Ultimately, the Court bases its conclusion on the text of the Act itself. This interpretation is further buttressed by consideration of the practical considerations discussed by Judge Gardephe in *United States v. Brown* and by the parties here. The Court concludes that because of the Act's six-month implementation period, Cheathum was not automatically discharged from parole on the effective date of the Act, March 1, 2022. Rather, Cheathum was discharged on April 28, 2022, the date on which DOCCS and the parole board calculated and awarded Cheathum his earned time credits.

    **B.**    **Cheathum's Statements**

Cheathum argues that his statements to officers while handcuffed at his apartment during the search should be suppressed, either as fruit of the poisonous tree, or, in the alternative, because Cheathum was not advised of his *Miranda* rights at the time he was handcuffed. For the reasons set forth above, the Court concludes that Cheathum's statements were not "fruit of the poisonous tree" because there was no unlawful search. The Court next considers whether Cheathum's statements should be suppressed because he was not advised of his *Miranda* rights.

The Government concedes that handcuffing Cheathum, "though reasonable to the officers' investigatory purpose under the Fourth Amendment, nevertheless placed him in custody for purposes of *Miranda*." (ECF No. 42 at 8) (quoting *United States v. Newton*, 369 F.3d 659, 677 (2d Cir. 2004)). The Government contends, however, that the officers' questions "'relate[d] to an objectively reasonable need to protect the police' from the 'immediate danger' of an unsecured firearm," and as such, the officers' questions and Cheathum's statements meet the public safety exception to *Miranda*. (*Id.*) (quoting *New York v. Quarles*, 467 U.S. 649, 659 n.8 (1984)). The Court agrees. As discussed above, earlier on the day of the search, the officers had observed an Instagram post in which Cheathum was holding a firearm and performed the search for that reason. Therefore, when the officers entered Cheathum's apartment, they had reason to believe that there could be a firearm within the apartment but were unaware of its location. In the brief period between handcuffing Cheathum and locating the gun, the possibility that Cheathum possessed a gun in the apartment supported the officers' objective reasonable belief that that there remained a danger to them as they conducted the search, even when Cheathum was handcuffed. *Newton*, 369 F.3d at 678. While unlike in *Newton* there were no other individuals in the apartment during the search, the risk of an unlocated gun was still present. Therefore, the officers' questions and Cheathum's statements during the period between when Cheathum was handcuffed and when the officers located the gun meet the public safety exception.

### III. Motion to Dismiss the Indictment

Cheathum also moved to dismiss the Indictment based on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), arguing that the Government cannot meet its burden of showing that Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2126.

7

This motion is denied for the reasons stated from the bench at the hearing held on August 17, 2023.  (ECF No. 45 at 15-16.)  As this Court explained in *United States v. Barnes*, 22-CR-43 2023 WL 2268129, *1-2 (S.D.N.Y. Feb. 28, 2023), the Court considers itself to be bound by the Second Circuit's holding in *United States v. Bogle*, 717 F.3d 281-82 (2d Cir. 2013), that Section 922(g)(1) is constitutional under the Second Amendment.  *Accord United States v. Davila*, No. 23-CR-292, 2023 WL 5361799, *2-3 (S.D.N.Y. Aug. 22, 2023) (Rakoff, J.); *United States v. Hampton*, No. 21-CR-766, 2023 WL 3934546, *10-13 (S.D.N.Y. June 9, 2023) (Cronan, J.).

### IV. Conclusion

For the foregoing reasons, Cheathum's motion to suppress and motion to dismiss the Indictment are denied.

The Clerk of Court is directed to close the motions at ECF Nos. 36 and 38.

SO ORDERED.

Dated: January 18, 2024
New York, New York

_____
J. PAUL OETKEN
United States District Judge